## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD LEVEY, JOHN and SUSAN )
L. WALTER, h/w, and ALLSTATE ) C.A. No. 06-510 JJF
INSURANCE COMPANY, )
      Plaintiffs, )
       )
v. )
DELAWARE BAY LAUNCH )
SERVICE, INC., )
      Defendant. )
and )
BOAT AMERICA CORPORATION )
      Defendant/Third-Party )
      Plaintiff )
v. )
DELMARVA TOWING & SALVAGE )
a/k/a SOUTHERN DELAWARE )
TOWING AND SALVAGE, )
      Third-Party Defendant. )

### THIRD-PARTY COMPLAINT

1.    Defendant/Third-Party Plaintiff has been sued by the Plaintiffs for injuries alleged to have occurred as a result of a accident on April 22, 2005 involving the towing of the boat "Seas The Day2." A copy of the Complaint is attached hereto as Exhibit "A."

2.    Defendant/Third-Party Plaintiff and the Third-Party Defendant entered into a License/Service Agreement to provide towing services in the area where the alleged incident occurred. A copy of the Agreement is attached hereto as Exhibit "B."

3.    According to paragraph 8 of the License/Service Agreement, the Agreement automatically renewed each year and was in force on the date of the alleged incident.

4.    Pursuant to paragraph 11 of the License/Service Agreement:

"Applicant [Delmarva Towing & Salvage a/k/a Southern Delaware Towing and Salvage] shall indemnify and hold both BoatU.S. and its directors, officers and employees harmless from and against any and all losses, damages, expenses, costs and liability

(including, without limitation, reasonable attorneys' fees) of any nature arising out of or connected with the Applicants' negligence or willful misconduct in conducting any operations under any BoatU.S. service mark."

5.    Pursuant to paragraph 6 of the License/Service Agreement:

"Applicant [Delmarva Towing & Salvage a/k/a Southern Delaware Towing and Salvage] shall at all times during the term of this Agreement maintain at least $300,000 of liability insurance in effect for each tow bow with respect to its towing operations, obtain said liability insurance from an insurance company licensed and admitted to write coverage in Applicants' State, name BoatU.S. as an additional insured under such insurance policy..."

6.    Upon information and belief, Defendant/Third-Party Plaintiff alleges the Third-Party Defendant employed the Co-Defendant Delaware Bay Launch Service, Inc. as a sub-agent pursuant to paragraph 12 of the Agreement. As such, any negligence of the sub-agent is imputed to the Third-Party Defendant.

7.    Without admitting liability to any party, if the Defendant/Third-Party Plaintiff Boat America Corporation is held liable for the payment of damages to any party, it is entitled to contribution and/or indemnification from the Third-Party Defendant Delmarva Towing & Salvage a/k/a Southern Delaware Towing and Salvage, whose negligence, or breaches of contract, were the sole proximate cause of the incident and injuries alleged in the Plaintiffs' Complaint.

8.    Defendant/Third-Party Plaintiff demands the relative degrees of fault of it and the Third-Party Defendant be determined by the jury pursuant to 10 Del. C. § 6301, *et seq*.

WHEREFORE, Defendant/Third-Party Plaintiff Boat America Corporation demands Judgment for contribution and/or indemnification be entered in its favor and against the Third-Party Defendant.

**[SIGNATURE ON NEXT PAGE]**

**RAWLE & HENDERSON LLP**

/s/ William J. Cattie, III  #953
William J. Cattie, III, Esq. – ID # 953
300 Delaware Avenue, Suite 1015
P. O. Box 588
Wilmington, DE 19899-0588
302-778-1200
Attorney for Defendant/Third-Party Plaintiff
Boat America Corporation

Dated:  January 26, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD LEVEY, JOHN and SUSAN L. WALTER, h/w, and ALLSTATE INSURANCE COMPANY, | ) ) ) | C.A. No. 06-510 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| BOAT AMERICA CORPORATION and DELAWARE BAY LAUNCH SERVICE, INC., | ) ) ) | |
| Defendant. | | |

### CERTIFICATE OF SERVICE

I, William J. Cattie, III, Esquire, do hereby certify that on January 26, 2007, I have

caused to be sent via E-filing the **THIRD-PARTY COMPLAINT** to the following

individual(s):

Charles M. Oberly, III
Oberly, Jennings & Rhodunda
1220 Market Street, Ste. 710
P.O. Box 2054
Wilmington, DE 19899-2054
Attorney for Plaintiffs

Michael B. McCauley, Esq.
Palmer Biezup & Henderson, LLP
1223 Foulk Road
Wilmington, DE 19803
Attorney for Defendant Delaware Bay Launch
Service, Inc.


**RAWLE & HENDERSON** LLP


/s/ William J. Cattie, III  #953
William J. Cattie, III, Esq. – ID # 953
300 Delaware Avenue, Suite 1015
P. O. Box 588
Wilmington, DE 19899-0588
302-778-1200
Attorney for Defendant,
Boat America Corporation

# EXHIBIT A

08/24/2006  10:34    7034614668                TOWING HQ                              PAGE  02/07

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Howard Levey, John and Susan L. Walter, h/w :
*and*                                      :
Allstate Insurance Company              :
                       Plaintiffs   :

        V.                                 :

Boat America Corporation,               :
*and*                                      :
Delaware Bay Launch Service, Inc.       :
                     Defendants   :

Complaint        0 6 -   5 1 0

## COMPLAINT IN ADMIRALTY

Plaintiffs Howard Levey, John and Susan Walter, h/w and Allstate Insurance Company, Inc., by their attorneys, Stephen K. Carr and Charles M. Oberly, III, complaining of the defendants respectfully state and allege upon information and belief as follows:

## PARTIES

1.      Individual Plaintiffs are residents and citizens of Pennsylvania.

2.      Plaintiff Allstate Insurance Company is a corporation organized under the laws of the State of Illinois having its principal place of business in the State of Illinois.

3.      Defendant Boat America Corporation ("BoatU.S.") is a corporation incorporated under the laws of the State of Delaware having its principal place of business in Alexandria, Virginia.

4      Defendant BoatU.S. either itself or through its franchises is licensed to do business in Delaware.

08/24/2006  10:34    7034614568                    TOWING HQ                                    PAGE  03/07

5       Defendant BoatU.S. is engaged, among other things, in providing towing services

to its members through its licensees/franchisees.

6       Defendant Delaware Bay Launch Service, Inc. is a corporation incorporated under

the laws of the State of Delaware and has its principal place of business in Milford, Delaware.

7.      Defendant Delaware Bay Launch Service, Inc. is engaged, among other things, in

providing towing services.

## JURISDICTION AND VENUE

8       This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure.  This Court has subject matter jurisdiction pursuant to 28

U.S.C. § 1333.

9       Venue is properly laid in this district pursuant to 28 U.S.C. § 1391, the claims in

this action arose in this district as more fully set forth herein.  Accordingly, all or a substantial

part of the events or omissions giving rise to the claims in this action occurred in this district.

## FACTS

10.     On April 22, 2005, Plaintiff Howard Levey was the owner of a 25 foot Grady

White sportfishing vessel, "Seas the Day2", and was a member of BoatU.S.

11.     On April 22, 2005, Plaintiffs Levey and Walters departed the Cedar Creek Marina

in Milford, Delaware aboard "Seas the Day2" en route to Ocean City, Maryland.

12.     Upon entering Delaware Bay, "Seas the Day2" ran aground on a mud shoal.

13.     Despite the best efforts of Plaintiffs Levey and Walters, "Seas the Day2" could

not be refloated.

14.     A call was made to the nearest BoatU.S. representative in the area, co-defendant

Delaware Bay Launch, Inc., located in Milford, Delaware.

p.4                                                    XAF TEJREZAJ PH    MA20:4 9002 81 guA

15      Co-defendant Delaware Launch, Inc. advised Plaintiffs that because of water depth they would not be able to assist until "half tide" in about 4 hours.

16      Despite the passage of more than four hours, co-defendant Delaware Bay Launch, Inc., did not come to the aid of "Seas the Day2", which eventually was cast against the stone jetty nearby and became a constructive total loss.

17      The United States Coast Guard, responding to a MayDay call from the Plaintiffs, carried out a helicopter medivac rescue of all three Plaintiffs from the beach on which they were stranded and transported them to Cape May, New Jersey, where Plaintiffs Levey and John Walter received Emergency Room treatment and Plaintiff Susan Walter was admitted at the Burdette Tomlin Memorial Hospital.

### FIRST CAUSE OF ACTION AGAINST BOATU.S.

18.      Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 17.

19.      Plaintiff Howard Levey has been a member in good standing of BoatU.S. since 1981 with an unlimited option.

20.      Defendant BoatU.S.' contract with its members in good standing provides towing services from a licensed towing company 24 hours per day.

21.      Defendant BoatU.S.' contract with its members in good standing provides for ungrounding assistance for a soft grounding.

22.      Defendant BoatU.S. breached its contract with Plaintiff Howard Levey in failing to provide towing service through its licensed towing company.

23.      Defendant BoatU.S. breached its contract with Plaintiff Howard Levey by failing to provide ungrounding assistance through its licensed towing company.

24.    Defendant BoatU.S.'s breach of contract has caused serious and permanent damage to its member Plaintiff Howard Levey.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT BOATU.S.

25.    Plaintiffs Levey and Walters repeat and reallege each and every allegation set forth in paragraphs 1 through 24 as if more fully set forth herein.

26.    Defendant BoatU.S. owed Plaintiffs a duty to provide competent towing and ungrounding services to the boat "Seas the Day2" and its occupants through its licensed towing company, Delaware Bay Launch, Inc.

27.    Defendant BoatU.S. through its licensed towing company was negligent and otherwise failed to exercise due care in carrying out its duty to provide competent towing and ungrounding services.

28.    As a result of defendant BoatU.S.' negligence, Plaintiffs Levey and Walters have suffered personal injuries, pain and suffering, and economic losses as a result of the destruction of "Seas the Day2".

## THIRD CAUSE OF ACTION AGAINST DEFENDANT DELWARE BAY LAUNCH, INC.

29.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 28 of the Complaint as if more fully set forth herein.

30.    Defendant Delaware Bay Launch, Inc., as a licensed towing company of defendant BoatU.S., owed a duty to Plaintiffs to use due care in performing its towing and ungrounding services.

31.    Defendant Delaware Bay Launch, Inc., was negligent and otherwise breached its duty to use due care in performing its towing and ungrounding services.

4

08/24/2006  10:34    7034614668                TOWING HQ                        PAGE  06/07

32.     As a result of defendant Delaware Bay Launch, Inc.'s negligence, Plaintiffs Levey and Walters have suffered serious permanent personal injuries, pain and suffering, and economic losses as the result of the destruction of "Seas the Day2."

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS BOATU.S. AND DELAWARE BAY LAUNCH, INC.

33.     Plaintiff  Allstate Insurance Company repeats and realleges each and every allegation set forth in paragraphs 1 through 32 of the Complaint as if more fully set forth herein.

34.     Plaintiff Allstate Insurance Company paid Plaintiff Levey a claim under his homeowners insurance coverage for the loss of his boat.

35.     Total damages sustained by Plaintiff Allstate Insurance Company as a result of this claim were $45,483.75.

36.     Plaintiff Allstate Insurance Company sustained these damages as the result of the negligence of Defendant BoatU.S. and its licensed towing company Defendant Delaware Bay Launch, Inc. in failing to carefully and properly perform their duty of providing towing and ungrounding services to the Plaintiffs.

P.7                                    HP LASERJET FAX        Aug 18 2006 4:02PM

08/24/2006  10:34    7034614668                    TOWING HQ                                          PAGE  07/07

WHEREFORE, Plaintiffs demand judgment against the defendants, jointly and severally, personal injuries, pain and suffering, and economic losses in excess of $75,000, plus interest, attorneys' fees, litigation expenses, prejudgment and post judgment interest, costs and such other and further relief as may be just and proper.

Respectfully submitted,

OBERLY, JENNINGS, & RHODUNDA

By: _Charles M. Oberly III_
Charles M. Oberly, III (743)
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899-2054
Attorney for Plaintiffs

Dated: 8/17/2006

6

# EXHIBIT B

10322



**Tow BoatU.S.**

TOWING

DEC 0 7 2000

# 2001

# License/Service
# Agreement

*Please Return
By
November 30, 2000*



**BoatU.S.**
BOAT OWNERS ASSOCIATION OF THE UNITED STATES

10322

# 2001 TowBoatU.S.® License/Service Agreement

## REQUIREMENTS

Completion of this Application is required and, upon approval, forms a part of the 2001 TowBoatU.S. License/Service Agreement attached hereto.

To establish your status as a TowBoatU.S. Towing Company, which includes direct billing BoatU.S., listing in *The BoatU.S. Guide to Towing Companies* and BoatU.S. website, and exclusive rights to use the TowBoatU.S. name, you must:

☐ Read and complete this Agreement. Remember to initial pages 3 & 4 and sign and date page 12.

☐ Enclose copies of all NEW or renewed part-time and full-time Captains' USCG Licenses.

☐ Provide proof of insurance for each boat - **Certificate of Insurance** indicating minimum $300,000 of tower's liability coverage in force and naming BoatU.S. (not TowBoatU.S.) as an additional insured.

☐ Identify ACAPT Certificate # on pages 3, 4 & 13 (ACAPT status subject to verification from C-PORT)

**OR**

☐ Complete the Equipment Checklist on page 13 and provide the following:
    ☐ Copy of any new vessel and base station FCC License(s).
    ☐ Name and phone number of random drug testing program.
☐ Mail completed Application/Agreement and all the above materials to:
    BoatU.S. Towing Services
    880 South Pickett Street, Alexandria, VA 22304

Upon acceptance into the TowBoatU.S. Program, BoatU.S. will send you a signed copy of this Agreement. Please note – this Application and Agreement is **not** approved until it has been signed by an authorized representative of BoatU.S.

## TOWING COMPANY INFORMATION

**Company Name:** Delmarva Towing & Salvage

Tower Code: ____10322 10499____    Company Tax ID #: _510339513_

Mailing Address: 25 Railway Road

City: ___Millville___    State: __DE__   Zip: 19970

Street Address (if different from mailing address): _____

City: _____    State: _____    Zip: _____

### TOWING COMPANY INFORMATION continued

Phone Numbers - Regular Office Number: __(302) 537-2305__    After Hours: _302-537-5378_

Cellular Number(s): ___(302) 227-5209 462-5205___

_____    Fax (302) 537-5378 537-2553

_____ Web Page: _____

Print Owner(s) Name(s): Clarke Disney

Drug Testing Program: Med Lab Clinical Testing    Phone: 302-644-2707

Address: _355 savnh Rd, Lewes, DE_

10322

# 2001 TowBoatU.S.® License/Service Agreement

BC        S. *TOWING GUIDE* AND BOATU.S./TOWBOATU.S. WEBSITE INFORMATION

The following information is required for *The BoatU.S. Guide to Towing Companies* and BoatU.S. website.  (If you have more than 3 approved ports make copies of this page and attach copies.)

PORT #1 (Primary) "TowBoatU.S. Indian River  INLET  *DD*

**Initial Here**
*CTD*

(i.e. "TowBoatU.S. Alexandria"-Prominent geographic location)

Towing Company Name:  Delmarva Towing & Salvage                              Tower Code: 10322 10499

CAPT Certified? ☒ Yes – Certificate #: *IN PROCESS*                    or ☐ TowBoatU.S. Vessel Equipment checklist Attached

Port Location (City & State): Bethany Beach, DE                    *Lat./Long.: 38.36.5N/075.04.5W
(Only city and state will be listed in *The Guide* and on the BoatU.S. website. * Lat./Long. information is for Dispatch Mapping and internal use only.)

Marina or Location Name & Address: ~~South Shore Marina~~ *INDIAN RIVER SEASHORE STATE PARK*

Primary Telephone Number: 302-537-2305 / *537-9798*  After Hours Number: 302-537-~~2305~~ *5378*
(Only one primary telephone number will be listed in *The Guide* and on the BoatU.S. website.)

Check applicable boxes as they pertain to Port #1:
(1) Tower accepts float plans and will contact Coast Guard if boater does not call in............................ ☒ Yes ☐ No
(2) Company has capability to handle salvage, wreck removal and "hi & dry" serious groundings ............ ☒ Yes ☐ No
(3) Company has pollution containment and clean-up capabilities.................................................. ☒ Yes ☐ No
(4) Tower has access to dockside emergency repair capabilities................................................... ☒ Yes ☐ No
(5) Tower can arrange for dockside transportation to motel, store, etc........................................... ☒ Yes ☐ No

PORT #2 "TowBoatU.S.  Lewes

**Initial Here**
*CTD*

(i.e. "TowBoatU.S. Alexandria"-Prominent geographic location)

Towing Company Name:  Delmarva Towing & Salvage                              Tower Code: 10322 10499

CAPT Certified? ☒ Yes – Certificate #: _____ or ☐ TowBoatU.S. Vessel Equipment Checklist Attached

Port Location (City & State): Lewes, DE                        *Lat./Long.: 38.47/075.09.0
(Only city and state will be listed in *The Guide* and on the BoatU.S. website. * Lat./Long. information is for Dispatch Mapping and internal use only.)

Marina or Location Name & Address: Rehoboth & Lewes Canal

Primary Telephone Number: 302-537-2305                        After Hours Number: 302-537-2305
(Only one primary telephone number will be listed in *The Guide* and on the BoatU.S. website.)

Check applicable boxes as they pertain to Port #2:
(1) Tower accepts float plans and will contact Coast Guard if boater does not call in............................ ☒ Yes ☐ No
(2) Company has capability to handle salvage, wreck removal and "hi & dry" serious groundings ............ ☒ Yes ☐ No
(3) Company has pollution containment and clean-up capabilities.................................................. ☒ Yes ☐ No
(4) Tower has access to dockside emergency repair capabilities................................................... ☒ Yes ☐ No
(5) Tower can arrange for dockside transportation to motel, store, etc........................................... ☒ Yes ☐ No

10322

# 2001 TowBoatU.S.® License/Service Agreement

BOATU.S. *TOWING GUIDE* AND BOATU.S./TOWBOATU.S. WEBSITE INFORMATION continued

PORT #3  "TowBoatU.S. _____Indian River Inlet_BAY_____"

(i.e. "TowBoatU.S. Alexandria"-Prominent geographic location)

| Initial Here |
|---|
| CTD |

Towing Company Name:  Delmarva Towing & Salvage _____  Tower Code: 10322 10499____

ACAPT Certified? ☑ Yes – Certificate #: _____ or ☐ TowBoatU.S. Vessel Equipment Checklist Attached

Port Location (City & State): HARBER VIEW MARINA _____ *Lat/Long: _____
(Only city and state will be listed in *The Guide* and on the BoatU.S. website. * Lat/Long. information is for Dispatch Mapping and internal use only.)

Marina or Location Name & Address: OCEAN VIEW DC _____

Primary Telephone Number 302-537-2305 _____ After Hours Number: 302-537-5378____
(Only one primary telephone number will be listed in *The Guide* and on the BoatU.S. website.)

Check applicable boxes as they pertain to Port #3:

(1) Tower accepts float plans and will contact Coast Guard if boater does not call in.................................☑ Yes ☐ No

(2) Company has capability to handle salvage, wreck removal and "hi & dry" serious groundings........... ...☑ Yes ☐ No

(3) Company has pollution containment and clean-up capabilities.......................................................... ...☑ Yes ☐ No

(4) Tower has access to dockside emergency repair capabilities................................................................☑ Yes ☐ No

(5) Tower can arrange for dockside transportation to motel, store, etc..................................................☑ Yes ☐ No

*This Agreement is made between BoatU.S.® and the Towing Co. identified on page 2 of this Agreement ("Applicant").*

❖  WHEREAS, BoatU.S. furnishes certain services to its Members, including but not limited to, towing and ungrounding services for Members' vessels; and 24-Hour Dispatch Service and a *"Guide To Towing Companies"*, and,

❖  WHEREAS, BoatU.S. wishes to ensure the quality and value of the services it furnishes to its Members; and,

❖  WHEREAS, Applicant wishes to be listed in *The BoatU.S. Guide to Towing Companies ("The Guide")* and BoatU.S. web site and to participate in the TowBoatU.S. and various other promotional programs offered by BoatU.S. for the benefit of its Members, NOW, THEREFORE, in consideration of the mutual promises made herein, BoatU.S. and Applicant agree as follows:

### Section I

1. **Recommendation of Towing Companies to BoatU.S. Members:** (a) Upon acceptance by BoatU.S. of this Agreement, Applicant shall be recommended to Members, listed in *The Guide* and the BoatU.S. web site, and shall be eligible for direct billing of towing invoices (as set forth in Section I, paragraph 4) for towing operations of the boats, boat Captains and port locations listed and approved in the Application.

(b) If additional boats, boat Captains or port locations are acquired or opened after the filing of this application, a written request must be submitted and approved prior to any use of TowBoatU.S. trademarks and prior to any direct billing to BoatU.S.

(c) Only TowBoatU.S. companies or temporarily commissioned Listed Towing Companies have the right to respond to VHF radio calls hailing "TowBoatU.S." or "BoatU.S." Listed Towing Companies may not respond to calls hailing "TowBoatU.S." or "BoatU.S." unless BoatU.S. has granted special, temporary commission. BoatU.S. shall not commission a Listed Tower within fifteen (15) miles of an existing TowBoatU.S. company's port.

(d) BoatU.S. shall recommend to Members needing assistance that they place a direct-VHF radio call for "TowBoatU.S." BoatU.S. shall also advise its Members that they may place a call to the BoatU.S. 24-Hour Dispatch Service.

(e) In addition, BoatU.S. shall continue, at its discretion, to undertake additional activities to promote the services of Applicant.

10322

# 2001 TowBoatU.S.® License/Service Agreement

**Adherence to Standards:** (a) In order to ensure the quality and value of services to its Members, BoatU.S. has adopted the standards, terms, conditions, operational and ethical codes for TowBoatU.S. towing companies set forth in this Agreement. Applicant hereby agrees to meet all such standards, terms, conditions and codes. If BoatU.S. determines that Applicant has failed to meet any of the standards, terms, conditions or any provision of the operational or ethical code set forth in this Agreement, BoatU.S. may terminate this Agreement in accordance with Section I, paragraph 8. After termination, BoatU.S. shall be entitled to delete Applicant from *The Guide* and the BoatU.S. web site, and remove the Applicant from the TowBoatU.S. program.

(b) Applicant agrees that BoatU.S. representatives may from time to time and at any time (upon reasonable advance notice) have access to and inspect 1) current copies of Captains' Licenses and Certificates of Insurance and:

2) all Applicant's boats bearing the identification set forth in Section I, paragraph 3, for purposes of monitoring and confirming Applicant's adherence to the standards, terms, conditions and code referenced above in paragraph 2(a) and elsewhere in this Agreement. Applicant expressly authorizes BoatU.S. to obtain from appropriate organizations copies of licenses, certificates, safety records, credit or criminal records, and any other information relevant to the applicant's
qualifications to service BoatU.S. Members. BoatU.S. will segregate credit and criminal records relating to a TowBoatU.S. company from any other records relating to that company. Such credit and criminal records shall be treated by BoatU.S. as highly confidential. BoatU.S. shall develop a security protocol for such confidential records which will define the procedures BoatU.S. will use to protect the confidentiality of these records, and BoatU.S. will provide a copy of said security protocol to TowBoatU.S. companies. The tower shall be allowed, with reasonable advance notice, the opportunity to review these confidential files and to dispute any information the Tower feels is incorrect.

(c) BoatU.S. shall not release any submitted credit and criminal records pertaining to TowBoatU.S. companies to anyone without the express prior written consent of Applicant, except as ordered by court of competent jurisdiction or another governmental authority, or as necessary in litigation between BoatU.S. and Applicant, or in cases of Termination Review, to members of the Termination Review Board.

(d) If at any time BoatU.S. considers taking an adverse action under this Agreement based upon information obtained under paragraph 2(b), it shall first provide copies of such information to the Applicant, at least 15 days prior to taking any such adverse action.

**3. Identification of Applicant:** The name BoatU.S. or Tow*BoatU.S.* or any variation thereof, shall not be used or displayed in any fashion without the advanced written approval of format and context by BoatU.S. Such approval shall not be unreasonably withheld. Tow*BoatU.S.* Signage: Applicant agrees to display standard signage reading "Tow*BoatU.S.*" together with the BoatU.S. bell buoy and stripes, approved hull colors and graphics on all of Applicant's towing vessels that will provide services covered by this agreement. Applicant shall have a reasonable, mutually agreed-upon time period within which to comply with this section. During term hereof, Applicant shall maintain the hull, paint and graphics in good condition.

**Billing of Towing/Ungrounding Services:** As TowBoatU.S., Applicant shall bill BoatU.S. directly for towing/ungrounding services provided to Members, in each case not to exceed the limit on the Member's card. BoatU.S. will include in its Towing Service Agreement with its Members language which notifies its Members that the Member is responsible for the immediate payment of all charges in excess of the limit of the towing service level specified on the Membership Card, provided amount billed is in accordance with contracted rates. Applicant may bill the Member directly for services rendered in excess of the limits on the Member's card in such cases. All invoices submitted to BoatU.S. hereunder must: (a) be in the form of a BoatU.S. standard invoice (copies of which shall be provided to Applicant by BoatU.S. at no charge); or (b) be in the form of a BoatU.S. standard invoice imprinted with Applicant's name and address (copies of which may be provided to Applicant by BoatU.S., at Applicant's request and at cost); or (c) contain all the information set forth on BoatU.S. standard invoice as set forth in Section II, paragraph 6. All invoices will be calculated based upon portal-to-portal time, including charges from a more distant approved port when required and Applicant has communicated in advance of the job in accordance with paragraph 17, below. Only invoices for boats, boat Captains and port locations listed and approved in this application will be authorized for direct payment to the Applicant, subject to the subcontractor exception in Section I, paragraph 12. All invoices not declined, will be paid within 30 days after submission to BoatU.S. Interest shall be paid on invoices after 30 days at the rate of one percent (1%) per month. BoatU.S. shall promptly notify Applicant of all disputed invoices.

**5. Solicitation of Membership in BoatU.S.:** As a Tow*BoatU.S.* licensee, Applicant may solicit new Members for BoatU.S. Upon solicitation of each new Member, Applicant shall submit to BoatU.S. the prospective new Member's completed enrollment materials and Membership dues or credit card charge number, together with the "Tower's Source Code" assigned to Applicant by BoatU.S. for this purpose. Membership shall be effective only after acceptance and processing of the enrollment materials by BoatU.S. BoatU.S. shall keep a record of all Members solicited by Applicant and accepted by BoatU.S., and shall pay Applicant $10.00 for each new Member, together with a bonus of $100.00 for each twenty (20) new Members directly solicited by Applicant and accepted by BoatU.S. In its solicitation of each new Member, Applicant shall inform the prospective Member that Applicant is not an agent of BoatU.S. and that Membership is not effective until acceptance and processing by BoatU.S

**6. Insurance:** Applicant shall at all times during the term of this Agreement maintain at least $300,000 of liability insurance in effect for each tow boat with respect to its towing operations, obtain said liability insurance from an insurance company licensed and admitted to write coverage in Applicant's state, name BoatU.S. as an additional insured under such insurance policy, and arrange for BoatU.S. to be provided with thirty (30) days notice prior to cancellation or non-renewal of such insurance policy. At the time Applicant submits this Agreement, Applicant and/or his insurer shall provide to BoatU.S. a certificate of insurance showing, to the satisfaction of BoatU.S., that these requirements have been met.

**Compliance With Law:** BoatU.S. and Applicant, together with its employees, agents, representatives, and subcontractors, shall comply with all applicable federal, state and local laws, regulations, ordinances, and rules. BoatU.S. and Applicant shall not engage in any price fixing, market allocation or other actions illegal under anti-trust laws.

10322

## 2001 TowBoatU.S.® License/Service Agreement

8. **Terms and Termination:** (a) The Agreement shall be for a term of three years. This agreement shall automatically renew for a comparable term unless either party delivers written notice of their intent to not renew or their desire to modify the Agreement at least 60 days prior to expiration. "Delivering written notice" is defined as mailing "first class, registered or certified mail through the U.S. Postal Service or via Federal Express" to the address of record. This Agreement shall become effective upon acceptance and execution by BoatU.S. and shall remain in effect until November 30, 2003. 2001

(b) This Agreement may be terminated by BoatU.S. by delivering written notice of proposed termination to Applicant in the event Applicant or any of its employees, agents, representatives or subcontractors breach Section I, Paragraphs 6, 7 or 12 of this Agreement. Such notice of proposed termination is subject to the review process of paragraph 8(d).

(c) In the event Applicant, its employees, agents, representatives or subcontractors- breach any other material term of this Agreement, BoatU.S. shall provide written 15-day cure notice to Applicant of the breach of this Agreement:

(i)   Applicant may cure such breach within a 15-day period from the date it receives the notice; or
(ii)  If a cure cannot reasonably be achieved within such 15-day period, Applicant may commence the cure within this 15-day period and continue diligently to prosecute such cure to completion and to the satisfaction of BoatU.S. Notwithstanding the foregoing, in the event of a reoccurrence of the same material breach of this Agreement, the cure period above shall not apply and BoatU.S. may terminate this Agreement immediately upon written notice and subject to the termination review process of paragraph 8(e).

(d) Upon termination or expiration of this Agreement, Applicant shall immediately cease to use, and shall either return to BoatU.S. or destroy, and confirm to BoatU.S. such destruction, all materials in its possession which bear any trademark or service mark owned by BoatU.S. and must also return to BoatU.S. any and all items owned by BoatU.S., including, but not limited to, communications equipment and display materials. In addition, Applicant shall immediately cease to use TowBoatU.S. signage and graphics, and shall remove such signage and graphics from all its boats, vehicles and office(s). Following termination, expiration or non-renewal hereof, Applicant shall have no further right to use or to display in any manner any trademark or service mark owned by BoatU.S. nor to answer TowBoatU.S. or BoatU.S. calls, nor to direct bill BoatU.S. Following termination, expiration or non-renewal of this Agreement, BoatU.S. shall cease using Applicant's name, likeness or location in any new advertising, promotion, listing or other material and shall use its best efforts to remove such identifying material from its web site and from any updated literature or advertisements.

(e) Any TowBoatU.S. company which is delivered written notice of proposed Termination may within 20 days of such notice request a hearing by the Termination Review Board ("TRB"). The TRB shall consist of two elected TowBoatU.S. towing company owners and two BoatU.S. employees.

(i)   The TRB shall meet either telephonically or in person at BoatU.S. Headquarters or other mutually agreed- upon location, within 15 days of a request for a review, to hear the Applicant and BoatU.S.
(ii)  The two parties (Applicant and BoatU.S.) shall equally share the costs of transportation of Termination Review Board members to Alexandria, Virginia for an in-person hearing.
(iii) The TRB shall review the evidence and any written submissions and render its written decision within ten days of the conclusion of the hearing.
(iv)  The company owner may appeal an adverse or split decision of the TRB within 10 days to the Chairman of BoatU.S., who will I independently review the evidence and within ten days render a written decision setting forth the facts and conclusions upon which the decision is based.
(v)   In the event Applicant chooses not to use the TRB, Applicant agrees that BoatU.S. will be the sole judge of whether or not Applicant has complied with the terms of this Agreement.
(vi)  Nothing in this Agreement shall be construed to prevent either party from exercising its judicial remedies.

9. **Independent Contractors:** In performing under this Agreement, Applicant and BoatU.S. are acting as independent contractors and not as agents or partners of one another. Neither party shall hold itself out as the agent of the other or shall attempt to bind the other in any way to a third party.

10. **Trademarks:** (a) "BoatU.S." and "TowBoatU.S." are trademarks and service marks of BoatU.S. and BoatU.S. shall take appropriate measures at its own expense to protect its trademarks and service marks from unauthorized use. All trademarks and service marks owned by BoatU.S. shall remain the sole and exclusive property of BoatU.S. and all use of any such trademarks or service marks by Applicant hereunder shall inure to the sole

benefit of BoatU.S. BoatU.S. reserves the right to decide whether and when to apply for the registration of all such trademarks and service marks, and all such registrations shall be in the name of and for the sole benefit and account of BoatU.S. BoatU.S. shall bear the cost of such applications for registration. Applicant shall use the BoatU.S. trademarks and services marks in accordance with the terms of this Agreement only, and in such a manner as to best preserve BoatU.S. interest in such trademarks and service marks, and Applicant shall not acquire any right in any such trademark or service mark by any such use. Applicant may only delegate, transfer or assign rights to trade under the BoatU.S. or TowBoatU.S. names in accordance with subparagraph (c) hereof.

(b) With prior written approval from BoatU.S., Applicant may, during the term of this Agreement, register and use the name "TowBoatU.S. - *location*" as an assumed name, where the "location" is the port of Applicant, however, Applicant is expressly prohibited from using BoatU.S. and/or TowBoatU.S. or any other BoatU.S. trademark, as part of Applicant's corporate name. All trademark and/or service mark use under this subparagraph shall inure to the sole benefit of BoatU.S. At the expiration or termination of this Agreement, Applicant shall immediately surrender any such registration of an assumed name which includes BoatU.S. or TowBoatU.S. and cease all such use of the "TowBoatU.S. - *location*" name.

10322

# 2001 TowBoatU.S.® License/Service Agreement

(c) Applicant may transfer this license Agreement in conjunction with the sale of all or a majority of Applicant's TowBoatU.S. business, following written approval of the new principals/owners by BoatU.S.; such approval shall not be unreasonably withheld. Individuals or entities not eligible for a new TowBoatU.S. license or in competition with BoatU.S. shall not be approved. Transfer of the TowBoatU.S. license without establishing BoatU.S. written approval terminates this Agreement as of the time of this transfer. This Agreement shall automatically transfer to the estate of the Applicant's principal owner upon his/her death. BoatU.S. shall cooperate with the estate or trustee of the principals of Applicants to assure the orderly transfer of Applicant's business to qualified individuals or entities upon the death or disability of Applicant.

(d) Applicant's principals shall not own or operate another Towing company affiliated with a national competing Towing membership program.

**11. Miscellaneous:** (a) This Application/Agreement represents the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous discussions, understandings and agreements with respect to such subject matter.

(b) Applicant shall indemnify and hold BoatU.S. and its directors, officers and employees harmless from and against any and all losses, damages, expenses, costs and liabilities (including without limitation reasonable attorneys' fees) of any nature arising out of or connected with Applicant's negligence or willful misconduct in conducting any operations under any BoatU.S. service mark.

(c) All notices required or permitted by this Agreement shall be deemed given when written notice is delivered to the other party at its address set forth on the Application.

(d) This Agreement may be modified or amended only by a written amendment signed by both parties.

(e) This Agreement shall be governed by the laws of the Commonwealth of Virginia, excluding the conflicts principles thereof.

**12. Applicant:** May not combine any trademarks or service marks owned by BoatU.S. with any other trademarks or service marks not owned by BoatU.S.; provided, Applicant may use its own independent service marks which may not exceed the size of the TowBoatU.S. signage, and may use decals not to exceed 8" X 10" signifying acceptance of Mastercard, Visa or American Express credit card services as payment for Applicant's towing services. Applicant recognizes that under this License, Applicant has certain opportunities and responsibilities to promote TowBoatU.S. services. Applicant agrees that during the term of this Agreement, it will use its best efforts to introduce, promote and provide TowBoatU.S. services to boaters. Applicant further agrees that during the term of this Agreement, Applicant, together with its employees, agents, representatives, and subcontractors, will take no actions which would undermine or compete with such promotion, such as, but not limited to, direct billing to or accepting payment from any national competing towing membership program, or the promotion of another boating association. Failure to comply with this provision will be considered by BoatU.S. to be a breach of this Agreement. Notwithstanding the foregoing, Applicant may, from time to time, based on emergency needs or special events, subcontract to a local tower affiliated with a national towing service to service BoatU.S. Members. Also, Applicant may, from time to time, based on emergency needs or special events, accept a subcontract from a local towing company of another national towing service to render aid to one of their members.

**13. Co-op Advertising:** To ensure the quality and consistency of the promotion of the services provided under BoatU.S. service marks, BoatU.S. will make available by reimbursement, up to $1000 per year to Applicant for co-op advertising. All co-op promotion concepts must be submitted to BoatU.S. for review, edits and approval thirty (30) days prior to publication. BoatU.S. shall promptly reimburse tower for approved co-op advertising upon receipt of all necessary documentation. BoatU.S. will match each dollar spent by Applicant on such approved advertising up to $1000. All co-op ads must identify Applicant as a licensee of the TowBoatU.S. service mark. Standard advertising concepts and layouts are available from BoatU.S.

**14. Phone Numbers:** No advertising shall combine TowBoatU.S. or BoatU.S. with any 800 number other than the BoatU.S. Emergency Dispatch number: 1-800-391-4869 or 1-800-391-4TOW.

**15. TowBoatU.S. Protected Area:** A Protected Area is an approximate radius of 10 miles from Applicant's approved port(s). As long as Service Levels are maintained, BoatU.S. will protect the 10-mile area.

    (a) Protected Area means that BoatU.S. will not authorize other TowBoatU.S. and/or Listed towing companies to establish a port within Applicant's area, unless agreed upon in writing by both the Applicant and BoatU.S.

    (b) Protected Area further means that any general TowBoatU.S. or BoatU.S. radio calls for assistance from a disabled boat within Applicant's Protected Area are the exclusive right of the Applicant, unless the boater has requested BoatU.S. Dispatch Service in which case it is subject to the Dispatch Protocol of Section I, paragraph 15(f).

(c) When Protected Areas overlap, any general TowBoatU.S. or BoatU.S. radio calls for assistance should be directed to the TowBoatU.S. company with an approved port closest to the boater's destination.

(d) Any direct calls to a specific Towing company are the exclusive right of that company, regardless of Protected Areas.

(e) Applicant must service a minimum of 90% of all BoatU.S. Members needing a tow in their Area. If service levels are not being met, BoatU.S. shall provide current information on service levels to applicant before any adverse action is taken (When more than one TowBoatU.S. company exists in the same area, a combined total of 90% must be met.) "Service" means either to provide the service directly, hand off the service request to another BoatU.S. Approved Tower with a better ETA or to hand off the tow to a non-Approved Tower with a better ETA than all other TowBoatU.S. or Listed towers. In the last instance, Applicant shall notify BoatU.S. Dispatch to flag the invoice for processing.

    (f) Dispatch Protocol: BoatU.S. Dispatch has the intent and will make the best effort to observe the following dispatch protocol:

10322     10322

# 2001 TowBoatU.S.® License/Service Agreement

(i)  for a disabled boat within the Applicant's 10-mile Protected Area, BoatU.S. Dispatch will first contact the Applicant's company, requiring an ETA of 60 minutes or less.

(ii)  for a disabled boat within overlapping 10-mile Protected Areas, BoatU.S. Dispatch will first contact the TowBoatU.S. company with an approved port nearest the boater's destination, requiring an ETA of 60 minutes or less.

(iii)  for a disabled boat outside of all 10-mile Protected Areas, BoatU.S. Dispatch will first contact a BoatU.S. approved company closest to boater's Destination.

(iv)  for a disabled boat beyond a 60 minute ETA of all approved BoatU.S. towing companies, BoatU.S. will contact any available resource closest to boater's destination.

(g)  Availability: Applicant must be available for towing service 7 days a week, 24 hours a day during the normal boating season for the local area. "Available" means that initial verbal contact is made within 5 minutes and a boat must be underway within 25 minutes of the initial contact. If verbal contact is not made within 5 minutes, or a response vessel cannot be underway within 25 minutes, or the total ETA is greater than 60 minutes, BoatU.S. Dispatch may seek another responder. If Applicant makes contact with Member and is unable to respond, Applicant agrees to contact BoatU.S. Dispatch immediately.

16. ETA's:  Applicant agrees to give accurate, realistic ETAs. Intentionally giving a false ETA is a breach of this agree-ment. In the event of an unavoidable delay, Applicant agrees to communicate with the Member, or with BoatU.S. in the case of a Dispatch, that Applicant will fail to make the original ETA. The Member and/or BoatU.S. Dispatch may at their discretion choose to wait the additional time required or to cancel the request for assistance and to seek assistance from another company.

17. Service Issues:  Applicant agrees to conduct all activities in a manner so as to present a quality visual and audible image, and seek to achieve the highest level of professionalism and good service to all boaters. Applicant agrees to co-operatively receive and attempt to resolve all complaints from BoatU.S. or its Members regarding Applicant's service, and to cooperate with and assist BoatU.S. in any inquiries involving Applicant's TowBoatU.S. operations. Prior to rendering service to Member, Applicant will make every reasonable effort to communicate whether the cost of the services requested are fully or partially covered under the Member's BoatU.S. On-The-Water Towing Service Agreement coverage. If the Member's coverage may be insufficient to cover the total of the requested service, Applicant will describe to the Member how the non-covered costs will be determined. If the service to be provided is other than a service which is covered under BoatU.S. On-The-Water Towing Service Agreement, Applicant will make every reasonable effort to inform the Member concerning the business arrangements upon which that service will be provided. Applicant agrees to apply the above principles to all boaters. Nothing contained herein shall be construed to create a third-party beneficiary obligation under this contract.

18. Litigation:  Applicant will promptly notify BoatU.S. of all litigation or expected litigation by a third party which involves Applicant's activities under any part of this Agreement or in any litigation in which BoatU.S. or TowBoatU.S. is specifically named. Applicant agrees that BoatU.S. in its sole discretion shall direct the defense of any aspect of litigation directed at or impacting BoatU.S. or TowBoatU.S. trademarks. BoatU.S. will notify Applicant when litigation involving Applicant is brought. Applicant may retain counsel and direct such portions of any litigation which solely affect Applicant. BoatU.S. acknowledges Applicant's contractual obligations to its insurance carrier's rights to direct the defense and shall work cooperatively with Applicant's underwriters, taking no action to jeopardize Applicant's insurance coverage.

## Section II

| | |
|---|---|
| **Term and Conditions regarding Towing Definitions, Rates and Billing** | 1.  Towing vs. Salvage.  Applicant hereby agrees to use the following definitions in determining whether to invoice a job as "Towing/Ungrounding" or "Salvage." Applicant understands and agrees that Towing/Ungrounding is covered under the BoatU.S. Towing program and this Agreement. "Salvage" is not covered under the Towing Program and this Agreement. Whenever working for a BoatU.S. Member, Applicant will clearly identify salvage bills as such and will deliver them to the Member with instructions to deliver the salvage invoice to the owner's yacht insurance company.<br><br>For purposes of this Agreement and when performing salvage on a BoatU.S. Member's boat: |

- "Towing/Ungrounding" shall include any operation not involving immediate danger to the boat or to a legally protected marine environment and requiring only one towing vessel with lines attached to the grounded boat to refloat it.

"Salvage" includes operations involving immediate peril to the grounded boat, multiple towing vessels or special salvage equipment (pumps, air bags, dredging equipment, cranes, etc.).

10322

# 2001 TowBoatU.S.® License/Service Agreement

**Dock-to-dock tows.** (a) Applicant agrees to quote in advance and to provide a discount of at least twenty-five percent (25%) of their hourly rate specified in this Agreement, or an hourly rate of $100 per hour, for any scheduled tow of a Member's disabled boat from a dock or mooring, and for ALL tows from a Member's home dock or mooring.

(b) BoatU.S. will provide 100% payment, up to the Member's per-incident towing limit, for a tow of a disabled boat from a transient dock. "Transient" is defined as a restaurant dock, fuel dock or other dock not currently available for the Member's use.

(c) Other tows from a regular slip or mooring, marina or residence with available dock space will be paid at 50% of the invoice or the Member's per incident towing limit, whichever is less.

3. In all cases, coverage applies to one tow per incident. An "incident" is defined as an event or series of events arising out of the same accident or breakdown

4. Applicant agrees that BoatU.S. and BoatU.S. Members will receive the Applicant's lowest available rates not to exceed the maximum rates specified in this Agreement. If Applicant decides to publish lower rates to the general public or to provide lower rates to a group of recreational boaters, Applicant agrees to automatically provide a similar reduction in rates charged to BoatU.S. and BoatU.S. Members. Towing charges for ungrounding a Member's vessel will not exceed the rates charged to any other boating group or association of boaters or the rate set forth in this Agreement. BoatU.S. acknowledges that from time to time Applicant must "forgive" parts or all of un-collectable bills, or must negotiate a lower rate with an individual boater. This is not a violation of this Agreement. Applicant agrees, however, that a pattern of negotiations of lower rates with non-BoatU.S. Members is contrary to the spirit of this Agreement and shall be grounds for a Section I, paragraph 8(c) action.

5. **Unlimited Towing Option.** Applicant and BoatU.S. agree that (a) when Members holding the "Unlimited Option" break down within Applicant's service area (defined as a minimum of 25 miles in any direction - or 50 coastal miles - and 25 miles offshore) and are towed within the same service area, the following cost-sharing formula will apply: BoatU.S. pays 100% of the invoice up to $1000. BoatU.S. pays 50% of the invoice amount over $1,000 and Applicant "forgives" the remaining 50% of the invoice amount over $1000. (b) In all other cases, a $1000 limit applies.

6. Tower will obtain and include the following on all invoices:

    a) Towing Company Name, Address and Phone Number; Captain's Name; and Tow Boat's Home Port Location;

    b) Boat Operator's Signature (except when weather or sea conditions render it unsafe to do so), Address, Phone Number and Date Signed;

    c) Boat Owner's Name, Address and Phone Number If Different From Operator;

    d) BoatU.S. Member Name, # and expiration date;

    e) Date of Tow and Date of Breakdown;

    f) Time Out, Time On Scene, Time Complete and Time In;

    g) Indicate service performed: i.e. Tow, Ungrounding, Jump start, Fuel delivery, Salvage, etc.;

    h) Nature of Problem;

    i) Sea and Weather Condition;

    j) Boat Information - Size, Type, etc.;

    k) Exact location of pickup and drop-off; including whether or not pickup was at a dock;

    l) Specific Charges, Surcharges, Discounted rate for dock-to-dock tows, breakdown date and Total (Itemize All Fees);

    m) Local Towing Club Member: Yes / No;

    n) How Much Paid by Owner, How Much Billed to BoatU.S. or "No Charge-Local Club Member."

7. Applicant will check Membership Card to assure active status. Applicant will provide complete, accurate data and information needed for all work being discussed, performed or invoiced.

8. Tower agrees to maintain awareness of services provided to Members under the terms of the BoatU.S. Member Towing Service Agreement, and to limit invoices submitted to BoatU.S. to these services provided under the Member Towing Service Agreement.

10322

## 2001 TowBoatU.S.® License/Service Agreement

**9. Towing Rates:** During the term of this Agreement, Applicant will not charge more than the rates identified below to Members of BoatU.S. for Towing/Ungrounding services.

| | Rates to BoatU.S. Members | Rates to Non-BoatU.S. Members |
|---|---|---|
| **Daytime Hourly Towing Rate \*:** "Daytime" is defined as the period of time from sunrise to sunset. | ~~150.00~~ ~~$125~~ per hour $125 DD 2 HR MIN: IN OCEAN | ~~$125~~ per hour 20 165 DD |
| **Nighttime Hourly Towing Rate \*:** "Night-time" is defined as the period of time from sunset to sunrise. | $150 per hour 2 HR MIN: IN OCEAN | 175 ~~$150~~ per hour DD 2 HR MINIMUM IN OCEAN |
| **Ungrounding Rate (Define)\*:** | ~~$6~~ $10 per foot DD | ~~$6~~ $10 per foot DD |
| **Scheduled Dock-to-Dock Rate \*:** | ~~125~~ $100 DD ~~$90~~ per hour | 150 ~~$90~~ per hour DD |
| **Other Special Fees (Specify)\*:** SMALL CRAFT — + 25 HR GALE + 50 HR WINTER + 25 HR 11/1 – 3/31 | Fuel drop hourly rate +fuel,~~battdrops~~ DD ~~hourly rate +$25~~ | Fuel drop hourly rate +fuel,battdrops hourly rate +$25 |

\*Do not attach rate sheets. Towing rates must be concise and fit in the space provided.

*IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement, effective as of the date of acceptance by BoatU.S.*

Applicant: *Clark T Droney* _____
Signature                    Date

*CLARKE T DRONEY*
Print Name

Applicant Witness: *Carol A Droney* _____ 12|1|00
Signature                    Date

*Carol A. Droney*
Print Name

BoatU.S.: *Jerry Cardarelli* _____ 8/6/01
Signature                    Date

*JERRY CARDARELLI*
Print Name

BoatU.S. Witness: _____ 8/6/01
Signature                    Date

*DAVE DUMAS*
Print Name

Company Name (Please print): *SOUTHERN DEL TOWING & SALVAGE*

(handwritten left margin, vertical:) 1 HR RATE #125 / D2D #100 / 1 HOUR MINIMUMS (DD)

1st DAY RATE #125 / D2D #100 / 1 HOUR MINIMUMS (DD)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOWARD LEVEY, JOHN and SUSAN        )
L. WALTER, h/w, and ALLSTATE        )    C.A. No. 06-510
INSURANCE COMPANY,                  )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )
                                    )
BOAT AMERICA CORPORATION and        )
DELAWARE BAY LAUNCH                 )
SERVICE, INC.,                      )

            Defendant.

### CERTIFICATE OF SERVICE

I, William J. Cattie, III, Esquire, do hereby certify that on January 26, 2007, I have

caused to be sent via E-filing the **MOTION FOR LEAVE OF COURT TO FILE A THIRD-**

**PARTY COMPLAINT** to the following individual(s):

Charles M. Oberly, III                    Michael B. McCauley, Esq.
Oberly, Jennings & Rhodunda               Palmer Biezup & Henderson, LLP
1220 Market Street, Ste. 710              1223 Foulk Road
P.O. Box 2054                             Wilmington, DE 19803
Wilmington, DE 19899-2054                 Attorney for Defendant Delaware Bay Launch
Attorney for Plaintiffs                   Service, Inc.


**RAWLE & HENDERSON** LLP


/s/ William J. Cattie, III #953
William J. Cattie, III, Esq. – ID # 953
300 Delaware Avenue, Suite 1015
P. O. Box 588
Wilmington, DE 19899-0588
302-778-1200
Attorney for Defendant,
Boat America Corporation